IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 15, 2015 at Knoxville

**MICHAEL WEBSTER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3172    Mark J. Fishburn, Judge**

---

**No. M2014-02019-CCA-R3-PC – Filed December 22, 2015**

---

The Petitioner, Michael Webster, appeals as of right from the Davidson County Criminal Court's denial of his petition for post-conviction relief. On appeal, the Petitioner contends that his trial counsel was ineffective in the following ways: (1) she failed to inform him of his preliminary hearing and waived his right to appear without his permission; (2) she did not adequately communicate with him; (3) she did not consult with him to develop a "reasonable" trial strategy; (4) she did not fully investigate or present witnesses; (5) she did not request a mistrial following "possible jury panel contamination"; and (6) she failed to make appropriate objections during his cross-examination. Following our review, we conclude that the Petitioner is not entitled to relief, and the judgment of the post-conviction court is therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ALAN E. GLENN, JJ., joined.

Jesse Lords, Nashville, Tennessee for the appellant, Michael Webster.

Herbert H. Slatery III, Attorney General and Reporter; Sophia Lee, Senior Counsel; Glenn Funk, District Attorney General; Janice Norman and Sarah Davis, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Petitioner was indicted for the first degree premeditated murder of Nickalus Jones, the victim, in November 2009. Following a jury trial, he was convicted of second degree murder and sentenced to twenty-five years' imprisonment. The Petitioner

subsequently challenged the sufficiency of the convicting evidence on direct appeal, and a panel of this court affirmed his conviction.. Michael L. Webster, No. M2011-00521-CCA-R3-CD, 2012 WL 6032507, at *1 (Tenn. Crim. App. Dec. 5, 2012), perm. app. denied (Tenn. Apr. 9, 2013).

The Petitioner's conviction arose from a shooting that occurred on July 30, 2009, at a Nashville subsidized housing development, University Court. Webster, 2012 WL 6032507, at *1. Eyewitnesses testified that they saw an altercation between the Petitioner and the victim at University Court. According to witness testimony, the Petitioner and the victim met each other near one of the apartment units, and the Petitioner asked the victim whether he had a gun. The victim said that he did not have a gun and lifted his shirt up as proof. The witnesses testified that they did not see the victim with a gun. The victim began to beg for his life, but the Petitioner shot the victim. The victim attempted to run away, but the Petitioner chased him and continued to shoot at him. Id.

When the Petitioner was arrested at his home several days later, police recovered a gun and ammunition. Webster, 2012 WL 6032507, at *1. Ballistics testing confirmed that the bullet recovered from the victim's body was fired from the Petitioner's gun. No gun was found near the victim's body or on his person. Id.

The Petitioner testified at trial and claimed that he and the victim had been involved in a verbal altercation prior to the shooting. He asserted that he observed the victim with a gun when the victim lifted up his shirt. Webster, 2012 WL 6032507, at *2.

Following his unsuccessful direct appeal, the Petitioner filed a pro se petition for post-conviction relief on August 9, 2013. Following the appointment of counsel, two amended petitions were filed. In his petitions, the Petitioner proffered multiple allegations of ineffective assistance of counsel. The post-conviction court held an evidentiary hearing on May 1, 2014.

At the hearing, the Petitioner testified that trial counsel did not tell him that he had a preliminary hearing until after it occurred. He alleged that he was not allowed to appear at the hearing and that when he asked trial counsel why he did not attend, she replied that he "[didn't] need to go." When the Petitioner asked trial counsel what had happened at the preliminary hearing, she told him that "it got bound over" and that the State had provided "some CDs or something" as discovery. However, the Petitioner testified that trial counsel "never went over nothing [sic] with [him]" and that he never saw any of the discovery.

According to the Petitioner, trial counsel met with him "once every other month" for fifteen to twenty minutes per meeting and that they "sometimes" discussed his case at the meetings. However, the Petitioner testified that they did not discuss trial strategy, that he had no input regarding his defense, and that he did not know that they would be

utilizing a self-defense claim prior to his trial. The Petitioner stated his belief that trial counsel should have pursued a defense of voluntary manslaughter instead of self-defense.

The Petitioner also testified that trial counsel failed to interview witnesses. The Petitioner testified that he provided trial counsel with the names of two witnesses, "Fun Fun" and "Kiki," but, "to [his] knowledge[,] she never went and checked or asked [any] questions." He only knew these witnesses by their "street names," but he said that he provided trial counsel with addresses where they could be located. The Petitioner testified that he knew that trial counsel did not attempt to find the witnesses "[because] if [counsel] would have went [sic] to the address[,] [she] would have found them." He agreed that trial counsel told him that she was unable to locate the witnesses, but he was skeptical that she had actually made an effort to find them.

Contrary to his earlier testimony, on cross-examination the Petitioner admitted that he did know about his preliminary hearing prior to the hearing date because someone at the jail told him about it. However, he claimed that he did not meet trial counsel at all until after the hearing and that she waived his appearance without his permission. According to the Petitioner, he was imprisoned for a full month after the preliminary hearing before trial counsel met with him for the first time. The Petitioner testified that trial counsel did not tell him that identity might be an issue in the case or explain that she did not want to risk his being identified by witnesses at the preliminary hearing.

The Petitioner testified that trial counsel provided him with a copy of discovery sometime in November 2009. He and trial counsel "somewhat" discussed the discovery materials, and they also talked about several of the witnesses. The Petitioner estimated that he and trial counsel discussed the facts of his case two to three times for fifteen to twenty minutes each time. He and trial counsel also discussed the content of his statement to police wherein the Petitioner claimed that he was "defending himself" when he shot the victim. The Petitioner disagreed that saying he was "defending himself" was the same as saying that he acted in "self-defense." He opined that voluntary manslaughter would have been a better defense strategy because he and the victim "had a heated discussion before anything ever occurred," and, therefore, he was "in a state of passion" when he shot the victim.

Trial counsel testified that she spoke with the Petitioner prior to his preliminary hearing and that they discussed waiving his appearance, although she did not receive a written waiver from him. According to trial counsel, she met with the Petitioner in jail several times before the preliminary hearing, including on the morning of the preliminary hearing.

Trial counsel stated that, in the approximately one-year period between the "bind over" and trial, she met with the Petitioner over thirty times. During these meetings, trial counsel and the Petitioner discussed the discovery materials and trial strategy. Trial

counsel testified that she received input from the Petitioner regarding trial strategy and that, because of his statement to police in which he claimed to be defending himself, the defense was going to be a claim of self-defense. Trial counsel did not remember the Petitioner's telling her that he wanted to pursue a voluntary manslaughter defense.

Trial counsel spoke with witnesses to the shooting about the altercation that had occurred between the Petitioner and the victim prior to the shooting and about an apparent fight between the two that occurred earlier in the day. The altercation appeared to have been verbal, and there was no evidence that any kind of physical fight occurred. Trial counsel said that she spoke with all the witnesses that she was able to find. She testified that, although no weapon was found on the victim, she decided to pursue a claim of self-defense because the Petitioner insisted that he saw the victim with a gun. Pictures of the victim showed that he had a large, silver belt buckle on at the time, allowing for the inference that the Petitioner might have mistaken it for a gun.

Trial counsel recalled the Petitioner's telling her about Fun Fun and Kiki, but she denied that she had an address for either witness. She further stated that, although other witnesses apparently knew who they were, she never learned their real names. Trial counsel did receive information that they lived in the 12th Avenue North area, and she sent an investigator to the neighborhood to look for them, but to no avail. Additionally, trial counsel testified that she personally looked for these two witnesses in the University Court area on several occasions but was ultimately unsuccessful. She testified that she pursued all leads on witnesses provided by the Petitioner.

Trial counsel remembered that after voir dire, one of the jurors sent an e-mail to the jury coordinator stating that he had a conflict and was not comfortable serving on the jury. The e-mail from the excused juror was admitted as an exhibit at the post-conviction hearing. In the letter, the juror expressed his surprise at being picked for the jury panel because, during voir dire, he disclosed his close ties to the community where the shooting occurred. The juror stated that he did not feel comfortable serving on the jury and that he was concerned he may know some of the witnesses in the case. The juror was removed from the jury panel, and trial counsel stated that she did not voir dire him before he was released. Trial counsel agreed that she did not move for a mistrial based on the possibility that the excused juror had influenced other members of the jury panel.

Trial counsel agreed that she did not raise any objections during cross-examination of the Petitioner and explained that was because she believed that the Petitioner "was doing a very good job on direct and during cross-examination." Trial counsel was asked why she did not object to the following question from the prosecutor: "[C]an you approximate for us how many days did you work in the week before the murder?" Specifically, she was asked why she did not object to the prosecutor's use of the word "murder." Trial counsel said that "it wouldn't have occurred to [her]" to object to that question.

-4-

On cross-examination, trial counsel testified that she met with the Petitioner at least twice prior to the preliminary hearing and explained that she advised the Petitioner against appearing at his preliminary hearing because she thought identity might be an issue at trial, and she did not want witnesses to positively identify him at the hearing. She claimed that, at the time of hearing, she was not aware that the Petitioner had given a statement to the police wherein he admitted to shooting the victim. According to trial counsel, the Petitioner did not object to waiving his appearance at the preliminary hearing.

Trial counsel testified that she met with the Petitioner multiple times after receiving discovery. She estimated that she met with him thirty-plus times in jail, in addition to when she saw him on court dates. At these meetings, trial counsel discussed the discovery materials with the Petitioner, including recorded witness statements. According to trial counsel, she and the Petitioner discussed proceeding on a self-defense claim. Trial counsel agreed that proving self-defense would have been difficult because witness statements indicated that the victim was unarmed and unaggressive. However, trial counsel planned to rely on the fact that the victim was wearing a belt buckle to support a theory that the Petitioner thought he saw a gun when the victim lifted his shirt.

Trial counsel testified that the Petitioner never told her that he did not want to claim self-defense and never told her that he would rather proceed with a voluntary manslaughter defense. Trial counsel's decision to utilize a self-defense claim was based on the fact that the Petitioner had told police he was defending himself. She agreed that, generally, they pursued an "anything but first degree murder defense." Thus, in her closing statement, she actually did ask the jury to convict him of the lesser included offense of voluntary manslaughter if they decided that he had not acted in self-defense.

With respect to the dismissed juror, trial counsel recalled that, on the night of the first day of trial, one of the jurors wrote an email indicating that he was too conflicted to serve as a juror. Trial counsel could not remember whether the juror came to court on the second day of trial. To the best of trial counsel's recollection, the juror was dismissed prior to opening statements. She surmised that, because of the timing of the dismissal, the juror would have had very little opportunity to speak with other jurors about the case, and there was no evidence that he had tainted the jury. The parties agreed that he would be designated as one of the alternate jurors so that the case could proceed without interruption.

On September 20, 2014, the post-conviction court filed a detailed order denying the petition for post-conviction relief. With respect to the waiver of the Petitioner's appearance at the preliminary hearing, the court accredited trial counsel's testimony that the appearance was waived for tactical reasons. The court also concluded that the Petitioner's waiver of his right to appear was knowing and voluntary. Further, the court

noted that the Petitioner had "in no way suggested how his absence from the preliminary hearing prejudiced him . . . ."

Next, the post-conviction court addressed the Petitioner's claim that trial counsel failed to adequately communicate with him. The court noted that, assuming the Petitioner's testimony was true regarding the number of times he met with trial counsel, the total number of meetings would add up to approximately fourteen. The trial court determined that if trial counsel's testimony was accredited, the total number of meetings would be at least thirty-three. The court concluded that, based on either account, the number of meetings "appear[ed] to be reasonable." With respect to the substance of these meetings and the Petitioner's claims that there was no meaningful discussion regarding discovery or trial strategy, the court again accredited trial counsel's testimony that she discussed the case extensively with the Petitioner. In making this determination, the court noted that the Petitioner had actually testified that he and trial counsel went over the facts of his case several times and that he was provided with discovery early in the progression of his case.

The post-conviction court also concluded that trial counsel's reliance on a theory of self-defense was reasonable given the Petitioner's own statement to police that he was defending himself. There was a "history of animosity" between the Petitioner and the victim, which supported claims of both self-defense and voluntary manslaughter; however, the court found that it was reasonable to mainly focus on self-defense. The post-conviction court also found that the Petitioner failed to establish prejudice with respect to his claims that trial counsel did not adequately communicate with him or pursue a reasonable trial strategy.

The court found that trial counsel was persistent in her pursuit of potential witnesses, although she was ultimately unable to locate Fun Fun and Kiki, whom the Petitioner had specifically asked her to find. The court pointed out that the Petitioner had failed to produce any of the witnesses at issue at the post-conviction hearing, resulting in a failure to prove prejudice. Likewise, the court discredited the Petitioner's claims that trial counsel should have objected to the prosecutor's questions on cross-examination. The court found that "the objections would not have been sustained or were of minor significance."

Finally, the post-conviction court rejected the Petitioner's contention that trial counsel was ineffective for failing to move for a mistrial based on juror misconduct. The court found that the juror was actually voir dired by the trial court before he was dismissed, and the juror assured the trial court that "he did not share with any of the other jurors anything about his purported bias and the inability to serve as a juror on the trial." Therefore, there was no reason for trial counsel to request a mistrial, and the Petitioner was not prejudiced by her failure to do so.

ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective in the following ways: (1) she failed to inform the Petitioner of his preliminary hearing and waived his right to appear without his permission; (2) she did not adequately communicate with the Petitioner; (3) she did not consult with the Petitioner to develop a "reasonable" trial strategy; (4) she did not fully investigate or present witnesses; (5) she did not request a mistrial following "possible jury panel contamination"; and (6) she failed to make appropriate objections during cross-examination of the Petitioner. The State responds that the record supports the post-conviction court's denial of relief.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether

counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

The Petitioner first contends that trial counsel was ineffective because she failed to meet with him prior to his preliminary hearing and waived his appearance at that hearing without his permission. However, trial counsel testified that she met with him at least twice before the hearing and that she discussed waiving his appearance based on her belief that identity might be an issue in the case. Trial counsel explained that, at the time of the preliminary hearing, she was not yet aware of a statement the Petitioner gave to police wherein he admitted to shooting the victim, albeit in self-defense. The post-conviction court accredited trial counsel's testimony in this respect and found that the waiver of appearance was a reasonable strategic decision. It is well-established that, in post-conviction proceedings, "we should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation." Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The evidence reflects that trial counsel made a reasonable strategic decision based on the information she had at the time of the preliminary hearing, and the Petitioner is not entitled to relief on this issue.

Next, the Petitioner contends that trial counsel failed to adequately communicate with him. In the Petitioner's estimation, trial counsel met with him once every other month in the year leading up to his trial. According to trial counsel, she met with the Petitioner over thirty times during that same period. The post-conviction court concluded that, even taking the Petitioner's estimate of meetings as true, the number of meetings was appropriate. Indeed, regardless of the number of actual meetings, the Petitioner admitted that trial counsel discussed the facts of his case with him two to three times and that she provided him with all of the discovery materials. Also, she talked with the Petitioner about his statement to police and witness statements. We agree that, irrespective of the specific number of meetings between trial counsel and the Petitioner, the substance of the meetings included a thorough discussion of the Petitioner's case. Therefore, the Petitioner has not proven that trial counsel was ineffective in this respect.

Relatedly, trial counsel also testified that she discussed proceeding on a claim of self-defense with the Petitioner, and he never indicated that he would have preferred a different defense. Trial counsel admitted that prevailing on a theory of self-defense would be difficult, but she chose to proceed with that defense based on the Petitioner's statement to police. Also, there was evidence that there was an ongoing dispute between the Petitioner and the victim. In her closing statement, trial counsel asked the jury to convict the Petitioner of the lesser included charge of voluntary manslaughter in the event it rejected the self-defense claim. Trial counsel's testimony reflects that she made a reasonable strategic decision regarding which defense to pursue based on the evidence as a whole. Accordingly, the Petitioner has not proven that he was prejudiced by trial counsel's decision to pursue a self-defense claim.

-8-

With respect to the Petitioner's claim that trial counsel was ineffective for failing to locate and interview witnesses, none of these potential witnesses testified at the evidentiary hearing. We have long held that when a petitioner claims that counsel was ineffective for failing to discover, interview or present witnesses, "these witnesses should be presented by the Petitioner at the evidentiary hearing." Black v. State, 794 S.W2d 752, 757 (Tenn. Crim. App. 1990). This is the only way that the Petitioner can establish that failure "to call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the Petitioner." Id. Because the Petitioner failed to adhere to this imperative, he has failed to establish that he was prejudiced.

Next, the Petitioner asserts that trial counsel should have requested a mistrial based on possible jury contamination after one of the jurors asked to be excused based on a conflict. Determining whether to request a mistrial is a strategic decision and considerable deference is given to trial counsel when analyzing the effectiveness of counsel's assistance regarding trial strategies. See Wiley v. State, 183 S.W.3d 317, 331-32 (Tenn. 2006); see also Wiggins v. Smith, 539 U.S. 510, 521-22 (2003). The post-conviction court reviewed the trial record and found that the juror was voir dired prior to being dismissed and that the trial court believed that the juror had not discussed the case or his conflict with the rest of the jury panel. Further, he was immediately released from jury service. Trial counsel testified that she did not request a mistrial because the juror was excused before the presentation of any proof and because there was no reason to believe that the dismissed juror influenced other members of the jury. Under these circumstances, trial counsel was not ineffective for failing to request a mistrial. The Petitioner is not entitled to relief on this issue.

Finally, the Petitioner alleges that trial counsel was ineffective for failing to make any objections during cross-examination of the Petitioner. At the evidentiary hearing, the Petitioner questioned trial counsel about why she did not object to the prosecutor's use of the word "murder" in a question posed to the Petitioner. Trial counsel replied that it did not occur to her to object. She further explained that, generally, she did not make objections during the Petitioner's cross-examination because she believed that he was doing a good job. Although we agree that utilizing the word "murder" could undermine a claim of self-defense, we fail to see how this fleeting reference, and counsel's failure to object to it, prejudiced the outcome of trial. The Petitioner admitted to shooting the victim, and his claim that he was defending himself had already been greatly undermined by eyewitness accounts and evidence that the victim was unarmed. The Petitioner has pointed to no other specific question that he believes trial counsel should have objected to. This issue is without merit.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE